## No. 9047.

### BANK OF CENTER ET AL. v. CAIN.

1. STATE LANDS—*Assignment*—*Approval of State Board. Semble* that the approval of the State Land Board is a condition precedent to the right to assign a lease of state lands.

2. ESCROW—*Depository Bound by Terms of Deposit.* A bank which, having received documents in escrow, delivers them, in violation of the terms of the escrow, is liable.

3. —— *Conditions,* may be defined by a letter transmitting the documents deposited.

4. CONTRACTS—*Construed.* Two contracts relating to the same matter, the first in writing and the second in parol, and supplemental to the first, may both stand.

*Error to Rio Grande District Court, Hon. A. Watson Mc-Hendrie, Judge.*

Mr. JESSE STEPHENSON, for plaintiffs in error.

Mr. EZRA T. ELLIOTT, Mr. GEORGE P. WILSON, for defendant in error.

Mr. Justice White delivered the opinion of the court:

CAIN, as plaintiff in the trial court, recovered judgment against Charles Carney and Bert Hutcheson, co-partners, and the Bank of Center, a corporation, and its stockholders. The judgment debtors, defendants below, are the plaintiffs in error here. The cause of action is for damages which Cain claims to have sustained, by reason of the defendant bank wrongfully turning over to Carney and Hutcheson a certain draft and notes held by it in escrow. The controversy grew out of the following facts: Carney and Hutcheson were engaged in the real estate business, and entered into a contract with Cain whereby they agreed to sell him a certain lease of state lands situate in Rio Grande County. Subsequently this contract was abrogated, and new contracts made. It is the latter transactions that constitute the basis of this suit. By the terms of a written contract Carney and Hutcheson agreed that if Cain would "make the payments and perform the covenants" set forth in the contract to be made and performed by him, they would "assign and set over" all their "right, title and interest in and to" a "state lease" covering certain described land. The contract required Cain to pay Carney and Hutcheson for the lease $3,000 in the following manner: "$1,000 cash in hand paid, the receipt whereof is hereby acknowledged, and

the balance, $775.00 on October 1st, 1911, $500.00 on October 1st, 1912, $725.00 on October 1st, 1913, with interest at the rate of seven per centum per annum payable annually." The contract further provided that should Cain make default in his covenants and agreements, the contract might, at the option of Carney and Hutcheson, be forfeited, and the payments made on the contract be retained by them as liquidated damages. Cain in his pleadings alleged, and at the trial testified, that when this contract was presented for his signature, it was further agreed that Carney and Hutcheson should sign over the lease, and have such assignment approved by the State Land Board, and then placed in escrow with the defendant bank, and Cain was to deposit with the defendant bank the sum of $1,000 in cash, together with his four notes, payable at specified times to the order of Carney and Hutcheson, to be held in escrow by such bank, until such time as the lease so signed over and approved by the State Land Board had been deposited with it as aforesaid, and thereupon the cash and notes were to be delivered to Carney and Hutcheson. The escrow, upon the part of Mr. Cain, was completed as disclosed by certain correspondence between the Maryville National Bank of Maryville, Missouri, and defendant bank. June 23, 1910, the former wrote to the latter bank, at the request of Cain, as follows:

"* * * At request of Thomas Cain of this place, we hand you herewith the draft for $1,000. Mr. Cain is buying of Carney and Hutcheson an assignment of the lease they hold on northwest quarter Section 8, and southeast quarter Section 7, Township 40, Range 7, for $3,000.00, of which he pays $1,000.00 in cash and gives his note for the balance, divided into three notes of equal amounts, due respectively October 1st, 1911, 1912 and 1913, bearing seven per cent interest.

Mr. Cain says these notes are to be sent him here for execution, and if they are properly drawn as per understanding, as soon as he receives them he will sign them and send to you. Upon receipt of these notes by you, you

are then authorized to pay over to said Carney and Hutcheson the $1,000 herewith remitted, and deliver to them the said notes, upon delivery to you of the leases embracing the above described land, properly assigned to Mr. Cain and approved by the proper state officials, so that his rights under the lease will be unquestionable in every way.

The lease or leases, as Mr. Cain understands it, run for three years yet. If there are any complications whatever in the leases, or any question whatever about Mr. Cain's right to hold under the leases for the remainder of the term of about three years, you will not pay over the money or deliver the notes to said Carney and Hutcheson.

"It is further understood you are to hold the lease or leases in escrow until the notes given by Mr. Cain are paid. * * *

The original contract between Mr. Cain and Carney and Hutcheson in this matter was a little differently arranged, and in connection therewith Mr. Cain gave his three notes, which you hold and which are to be surrendered to him, and you will therefore kindly return them to us to be delivered to him. Such notes are to be cancelled in lieu of these new notes."

To this letter the defendant bank replied as follows:

"* * * We beg to acknowledge receipt of your letter of the 23rd, enclosing draft for $1,000.00, payable to order of Carney and Hutcheson of this place, to be delivered to them only on condition of assignment of land contract between them and one Thomas Cain. We are enclosing three notes executed by Mr. Cain, which are to be held until receipt by us of three substituted notes to be executed by Mr. Cain. When sent to us you may deliver these to Mr. Cain.

The leases to be assigned to Mr. Cain are now, and have been for some time, with the State Land Board at Denver. We are expecting these to be returned to us every day, but it sometimes takes a month to get papers back from there. However, we will examine same upon their return and see that they are properly executed so that there will be no

question as to the rights being vested in Mr. Cain to hold possession."

June 29th the defendant bank transmitted to the Maryville Bank the notes of Cain, properly cancelled, to which reference is made in the letter of June 23d, above set forth; and on July 3d the latter bank sent defendant bank the new notes of Cain in lieu thereof, and also the signed contract involved herein. The contract was sent, however, without the knowledge or consent of Cain.

In the lease deposited by Carney and Hutcheson with the defendant bank, Stella McCoy was named as the lessee, and her name appeared thereon as having assigned the same in blank. The assignment of the lease was never approved by the State Land Board. About four months before the maturity of any of the notes, Cain learned that the State Land Board had not approved the alleged assignment of the lease, and was told by such board that such approval was essential to a valid assignment. Cain thereupon called upon the defendant bank, inspected the lease and told the bank that he would not accept the same without such approval, and when the bank insisted that approval by the State Land Board was unnecessary, declined to go further in the matter, and demanded that it return to him the $1,000 draft and his notes. The bank had previously turned over to Carney and Hutcheson the $1,000 draft and Cain's notes; and when the first note matured, delivered the lease and the contract to Carney and Hutcheson upon their demand therefor.

The court found in favor of the plaintiff, thus establishing the existence of the supplemental agreement testified to by Cain, and embodied in the letter of the Maryville Bank to the defendant bank, transmitting the draft for $1,000. There is nothing inconsistent in the two contracts and they may both stand, though one was, and the other was not, reduced to writing and signed by the parties. The signed contract makes no reference to the giving of notes by Cain covering the deferred payments, and the only agreement therein relating to an escrow is found in the following

language: "It is agreed by both parties that the lease papers shall be put in escrow in the Bank of Center until all payments are made."

Defendants contend that the rights of all parties must be determined by the signed contract received by the defendant bank from the Bank of Maryville with the letter of July 3d, and that as there is no express provision in this contract that the transfer of the lease be approved by the State Land Board, none was required. We think it very doubtful, as a matter of law, whether a person would have discharged his obligation to "assign and set over" his "right, title and interest in and to" a state lease of lands without securing the approval of the transaction by such board. It is quite probable that such approval is a condition precedent to the right to transfer. Be that as it may, we are satisfied, under the finding of the court, that the signed contract was supplemented by the verbal contract; and that the rights of the parties relative to the escrow are dependent upon the terms of the letter transmitting the draft and the notes to the defendant bank. Having voluntarily become a bailee, the bank was bound by the terms of the bailment. Carney and Hutcheson sought possession of the escrow money and notes under a false claim, disregarded the escrow agreement, co-operated with the bank in its wrong, and are equally liable in the premises. The judgment is therefore affirmed.

Judgment affirmed.

Decision *en banc*.