# FRANK KEITH v. FIRST NATIONAL BANK OF NEW ENGLAND, NORTH DAKOTA, a Corporation.

(162 N. W. 691.)

**Escrow — persons receiving same — duties and liabilities — written instructions — delivery of — concerning — person to whom delivery to be made — delivery to other person — damages — action for.**

1. Where one delivers certain title deeds and papers in escrow to a bank, and at the time of the delivery of such papers to such bank also delivers to such bank an instrument containing written positive and definite instructions concerning the delivery of such papers to another, the purchaser, and containing the terms, specifying the time and conditions to be strictly observed by such bank in such delivery of such papers, and specifying the exact amount of money to be received by the bank when it delivers such papers in pursuance of such written directions and instruction, and such escrow, the bank, delivers such papers to another in violation of such written and definite instructions, and fails to receive or turn over the amount of money as specified in the written instructions, such bank is liable for damages for the full amount of money specified in such written instructions.

**Remedies — election of — escrow to bank — instructions — written — positive and clear — delivery to wrong person — damages — action for.**

2. Where one delivers certain title deeds in escrow to a bank, and, at the time of delivery of such title deeds and papers to such bank, also delivers to such bank an instrument setting forth and containing written positive and definite instructions and directions concerning the delivery of such title deeds and papers to another, the purchaser, and which contains the terms specified, the time and condition to be strictly observed by the depositary in making such delivery of such title deeds and papers, and which specifies the exact amount

---

Note.—An examination of the L.R.A. annotation to the case of Thornhill v. Olson, 31 N. D. 81, L.R.A.1916A, 493, 153 N. W. 442, which is discussed in the opinion above, on the necessity of strict compliance with the conditions of an escrow agreement, will show that there are very few cases that decide whether a strict compliance with such conditions is necessary, or whether a substantial compliance is sufficient; but those that do hold that the grantee in an instrument delivered in escrow is entitled to a delivery by the depositary to himself only upon a strict compliance by him with the terms of the escrow agreement. There seems to be no discussion therein of the liability of the depositary in case he does not comply with such conditions.

On escrows, generally, see extensive note in 130 Am. St. Rep. page 940 of which discusses the question of delivery by depositary.

of money to be reecived by such bank when it delivers such title deeds and papers in pursuance of such written direction and instructions, and such bank delivers such title deeds and papers to another in violation of such written and definite instructions, and fails to receive or turn over the amount of money as specified in the written directions and instructions, the owner of such title deeds and papers has an election of one of two remedies: he may maintain an action for the recovery of the lands, subject only to the rights of innocent purchasers for value without notice, or he may maintain an action for damages for the amount of money specified in the escrow papers, which money the bank failed to receive or turn over, and which escrow agreement was violated by the bank.

**Bank — officers of — directors — performing bank work — acting as cashier — customers — dealing with — reliance upon — bank legally bound.**

3. Where the officer of a bank, who is vice president and one of the directors thereof, and performs such duties, and, in addition to the performance of his regular duties as vice president and director of such bank, also at times assumes to perform and execute the duties of cashier of such bank, by waiting upon and serving the patrons and customers of such bank, and performs other services in and about the business of such bank to customers thereof, the public, or persons dealing with or patronizing such bank, have a right to assume that such officer is acting with authority, and have a right to rely upon such assumption, and the bank is legally bound by the acts of such officer "when so acting" to the public and patrons, customers, and those dealing with such bank.

Opinion filed April 16, 1917.

Appeal from the District Court of Hettinger County, *W. C. Crawford*, J.

Affirmed.

*Chas. Simon* and *Thos. H. Pugh*, for appellant.

An officer of a bank has a right to transact his own business at the bank of which he is an officer, and in such a transaction his interest is adverse to the bank, and he represents himself, and not the bank. 3 R. C. L. 478, and cases cited; Burrill v. Whitcomb, 100 Me. 286, 1 L.R.A. (N. S.) 451, 109 Am. St. Rep. 499, 61 Atl. 678, and cases cited.

The cashier of a bank is its chief officer, the executive of the bank, the business officer or head of the bank. He does not regulate it nor control it. Morse Bkg. 4th ed. § 152; 3 R. C. L. 444; 3 Enc. U. S. Sup. Ct. Rep. 89, and cases cited; United States v. City Bank, 21 How. 356, 16 L. ed. 130; First Nat. Bank v. Michigan City Bank, 8 N. D. 608, 80 N. W. 766.

The mere fact of any person, even the depositary himself, surreptitiously or fraudulently recording the deed or getting it recorded, does not give it any efficiency, and the cloud on the grantor's title thereby created will be canceled by a court of equity. 10 R. C. L. 636; 16 Cyc. 578; 11 Am. & Eng. Enc. Law, 348; Wilkins v. Somerville, 80 Vt. 48, 11 L.R.A.(N.S.) 1183, 130 Am. St. Rep. 943, 66 Atl. 893; Calhoun County v. American Emigrant Co. 93 U. S. 124, 127, 23 L. ed. 826, 827; Young v. Clarendon Twp. 132 U. S. 340, 33 L. ed. 356, 10 Sup. Ct. Rep. 107; Felix v. Patrick, 145 U. S. 317, 329, 36 L. ed. 719, 725, 12 Sup. Ct. Rep. 862; Schmidt v. Musson, 20 S. D. 389, 107 N. W. 367; Thornhill v. Olson, 31 N. D. 81, L.R.A.1916A, 493, 153 N. W. 442.

The rule is that upon the delivery of an escrow without performance of the conditions upon which it was to be performed, even a subsequent purchaser without notice and for a valuable consideration acquires no title and will not be protected. 11 Am. & Eng. Enc. Law, 2d ed. 350; 10 R. C. L. 636; 16 Cyc. 581; 1 Devlin, Real Estate 3d ed. § 322; Tiffany, Real Prop. § 406, pp. 932, 933; Wood v. French, 39 Okla. 685, 136 Pac. 734; Guthrie v. Field, 85 Kan. 58, 37 L.R.A.(N.S.) 326, 116 Pac. 218; Osby v. Reynolds, 260 Ill. 576, 103 N. E. 556, Ann. Cas. 1914D, 390; Dixon v. Bristol Sav. Bank, 102 Ga. 461, 66 Am. St. Rep. 193, 31 S. E. 96; Wilkins v. Somerville, 130 Am. St. Rep. 943, note.

Plaintiff could not elect to ratify the wrongful delivery of the papers after learning of the misdelivery and hold the bank for the amount which should have been paid, but which was not paid, leaving the bank, plaintiff's agent, without a remedy. 10 R. C. L. 638; Wilkins v. Somerville, 130 Am. St. Rep. 972, note; Eichlor v. Holroyd, 15 Ill. App. 657.

*C. S. Shippy,* for respondent.

"A person dealing with officers of a bank without notice of limitation of their powers may presume, and assume without inquiry, that they have the right to do such acts as those officers usually and customarily do and perform." 7 C. J. p. 783, § 647; Banks & Banking.

The want of authority of an agent of a corporation, to constitute a defense, must be pleaded. Wachsmith v. Merchants' Nat. Bank, 96 Mich. 426, 21 L.R.A. 278, 56 N. W. 9.

The defense of *ultra vires* is special, and is not available under a general denial. It must be specifically pleaded and proved. 10 Cyc. 1156;

Citizens State Bank v. Pence, 59 Neb. 579, 81 N. W. 623; Thomas Gordon Malting Co. v. Bartels Brewing Co. 206 N. Y. 528, 100 N. E. 457, 461; Royal Fraternal Union v. Crosier, 70 Kan. 85, 78 Pac. 162.

The law presumes that a thing delivered by one person to another was due to the latter. This presumption was not overcome. Comp. Laws 1913, § 7936, subd. 8.

"As a depositary is bound by the terms of the deposit, and charged with the duties voluntarily assumed by him, the rule is that liability attaches to him if he improperly parts with the deposit." 10 R. C. L. 634; Wilkins v. Somerville, 130 Am. St. Rep. 949, note; Citizens Nat. Bank v. Davisson, 229 U. S. 212, 57 L. ed. 1153, 33 Sup. Ct. Rep. 625, Ann. Cas. 1915A, 272.

"A depositary who violates the terms of the escrow contract is liable in damages for the loss suffered thereby." 16 Cyc. 576; Triggs v. Jones, 46 Minn. 277, 48 N. W. 1113.

A defendant is not at liberty to raise or open an issue he has closed by admissions in his answer. Myrick v. Bill, 3 Dak. 284, 17 N. W. 268; McLaughlin v. Alexander, 2 S. D. 226, 49 N. W. 99; Kirby v. Scanlan, 8 S. D. 623, 67 N. W. 828.

Issues not before the lower court, either by pleading or proof, and not relied upon, cannot for the first time be urged in the supreme court.

The theory upon which the case was tried must be followed in the appellate court. McLain v. Nurnberg, 16 N. D. 144, 112 N. W. 243; Buchanan v. Minneapolis Threshing Mach. Co. 17 N. D. 343, 116 N. W. 335.

It is the rule that an estoppel, to be available to a party, must be pleaded when the party has an opportunity to do so. McQueen v. Bank of Edgemont, 20 S. D. 378, 107 N. W. 208, and numerous authorities; Cloud v. Malvin, 108 Iowa, 52, 45 L.R.A. 209, 212, 75 N. W. 645, 78 N. W. 791; Brown v. Iowa L. of H. 107 Iowa, 439, 78 N. W. 73; Union State Bank v. Hutton, 1 Neb. (Unof.) 795, 95 N. W. 1061; Newhall v. Hatch, 134 Cal. 269, 55 L.R.A. 673, 66 Pac. 266; Wisconsin Farm Land Co. v. Bullard, 119 Wis. 320, 96 N. W. 833; Smith v. Cleaver, 25 S. D. 351, 126 N. W. 589.

The acts of the officials of the bank are the acts of the bank itself, when such officials are acting in and about the bank and the usual and customary work of the bank. People's Bank v. Manufacturers' Nat. Bank, 101

U. S. 181, 25 L. ed. 907; Thomas v. City Nat. Bank, 40 Neb. 501, 24 L.R.A. 263, 58 N. W. 943; Minnesota Mut. L. Ins. Co. v. Tagus State Bank, 34 N. D. 566, L.R.A.1917A, 519, 158 N. W. 1063; U. S. Rev. Stat. § 5163, Comp. Stat. 1916, § 9702.

GRACE, J.   This case is an appeal from a judgment of the district court of Hettinger county, and an appeal from an order of the said court denying the motion of the defendant notwithstanding the verdict, or, in the alternative, a new trial.

The plaintiff, in his complaint, in substance, states that defendant is a banking corporation under the laws of the United States of America. That the plaintiff deposited with defendant an assignment of contract for the purchase of the southwest quarter of section 23, in Township 135, north of Range 97, at the same time deposited a warranty deed for said land, both to be delivered by said defendant to W. T. Loomis upon the payment to said defendant by W. T. Loomis of one thousand nine hundred twenty-four and $^{59}/_{100}$ dollars ($1,924.59), for the account and credit of the plaintiff, on or before sixty (60) days from March 27th, 1911.   That said deposit was accompanied with a letter of instructions in words and figures as follows:

New England, N. Dak., Mar. 27th, 1911.

The First National Bank,
    New England, N. Dak.

I herewith deposit with you assignment contract for the purchase of S. W. $\frac{1}{4}$ 23–135–97, also warranty deed for the same land, all to be delivered to W. T. Loomis on payment of nineteen hundred twenty-four and fifty-nine one-hundredths dollars in your hands for my account and credit on or before sixty days from date.   Cash received to-day $40, leaving balance of $1,884.59.

Frank Keith.

That defendant, within said period of sixty days, turned over and delivered to said W. T. Loomis the assignment of contract and warranty deed of said premises; that defendant failed, neglected, and refused, and still fails, neglects, and refuses, to pay this plaintiff the sum of $1,884.-59, or to place the same to plaintiff's account and credit, or any part

thereof, though demanded, and claims damages in the sum of one thousand eight hundred eighty-four and $^{59}/_{100}$ ($1,884.59).

The defendant answering interposes a general denial, and on information and belief alleges that on the 1st day of January 1910, W. T. Loomis was the owner of said land and sold the same to plaintiff under contract for deed, payable in instalments and subject to prior indebtedness owed by Loomis and a then lien against the said land; and further alleges that it was agreed between W. T. Loomis and the plaintiff that W. T. Loomis should offer said land for sale to Mary Carlon, with whom Loomis was then in communication. It is further alleged by the defendant that it was agreed between Loomis, plaintiff, and one H. B. Baillet, in order to complete the sale of said land to said Carlon, or to such person as Loomis might be able to make sale to, and in order that such sale might be more readily consummated during the absence of plaintiff, assignment of the contract held by plaintiff together with the warranty deed from plaintiff to Loomis should be left with Baillet, who was acting in conjunction with Loomis in the sale of said land, and defendant further alleges that it was there agreed that in event Loomis should deem it necessary to place said documents of record in the office of the register of deeds in the county of Hettinger, in order to show merchantable title to said land any time, that the said Baillet should deliver the said documents to Loomis for such purpose, or himself have the same recorded. That Loomis and Baillet deemed it necessary, in order to show a merchantable title to said land in said Loomis for the purpose of sale, that said document should be placed of record, and they thereupon did have the same recorded in the office of the register of deeds for Hettinger county. Defendant further alleges that he had no custody or control of said documents nor any knowledge relative thereto, that said documents were always in the possession and under the control of H. D. Baillet and W. T. Loomis; that the transaction regarding the sale of said land to Mary Carlon was conducted by Loomis and Baillet in behalf of the plaintiff, and without knowledge of defendant, and for the benefit and profit of plaintiff and said Loomis and Baillet. Defendant further alleges that if the documents were placed with the defendant in the manner alleged by plaintiff, that such deposit was immediately released by directions of the plaintiff, then and there given contemporaneously with such deposit, that the same should be delivered to W. T.

Loomis when he should request, and that the same were delivered to Loomis upon his request and demand and according to directions aforesaid.

The facts in the case appear to be as follows: That on March 27th, 1911, the plaintiff delivered the assignment of contract then held by him for the purchase of the southwest quarter of section 23, township 135, north of range 97, and also a warranty deed to the same premises to the First National Bank of New England, North Dakota, and also at the same time delivered to the bank a certain written instruction with reference to the delivery of said assignment of contract and warranty deed, which is "exhibit A" in the case. That the contract and deed were to be delivered to W. T. Loomis on the payment of one thousand nine hundred twenty-four and $^{59}/_{100}$ dollars ($1,924.59) to the defendant for plaintiff within sixty (60) days from March 27th, 1911; that at the same time Loomis has paid $40 by a check to the plaintiff upon the purchase price of the plaintiff's equity in the said land, leaving a balance of $1,884.59 yet to be paid by Loomis to plaintiff. It is also a fact that during all the time of the transactions in this case, H. D. Baillet was the vice president of said First National Bank of New England, North Dakota, and one of the directors thereof, and performed part of the work in said bank, at times waited on the customers and otherwise took part in the business transactions in the bank. It is a further fact that the assignment of contract and warranty deed were kept by the defendant, after receiving them, for some months, and were delivered to said Loomis by the defendant by its vice president, Baillet. It is a further fact that defendant was in the habit of receiving papers in escrow and kept a file in his bank for papers left in escrow, and acted in similar capacity upon other occasions, and generally received papers from its customers in the course of its business.

We are now going to examine specifications of error assigned by the appellant. We have examined the same with considerable care and have scrutinized each assigned error for the purpose of determining whether the matters assigned as errors are really and truly reversible errors. The first error assigned is the overruling by the court of the objection of counsel for the defendant to the offer of plaintiff's counsel relating to the offer of plaintiff in evidence of deposition of testimony of one H. D. Baillet for the purpose of showing Baillet's relation with the

First National Bank at the time of the alleged transactions. The objection of the counsel for the defendant to the introduction of such testimony was that it was incompetent, irrelevant, and immaterial; that the transaction was not within the scope or powers of a national bank; that the contract sued upon is *ultra vires;* that there were no allegations set forth in the complaint that there was any consideration to the bank for the deed or on account of the contract, and no delivery by the bank, as alleged, and no transfer of the title to the land in question is alleged or could be made under the allegation of the complaint. We think that the court rightly overruled all such objections made to the introduction of such deposition made by the counsel for the defendant. Such testimony was competent to prove Baillet was an officer of the bank, his official connection therewith, his interest as a stockholder and part owner of such bank, that he performed duties in and about the conduct of said bank.

It is unnecessary to allege in the complaint that the transaction sued upon was within the scope and powers of a national bank; that was purely a matter of defense to be proved by competent testimony. Such contract was not *ultra vires,* as it was a common incident to the duties usually assumed and performed by such bank, and of all banks, and the testimony shows that this defendant was in the habit, and it was its custom to perform such duties. It was not necessary to allege any delivery by the bank, or transfer of any title to this land; the plaintiff having a perfect remedy without any such allegation in the complaint. All such objections by the counsel for the defendant were properly overruled by the court.

It was not error for the court to overrule objections of defendant's counsel to the testimony referred to in defendant's second assignment of error, for the reason that such testimony was competent to show delivery of a contract and deed to Baillet, he being an officer of the bank, and for the further purpose of showing what became of the papers, also to show such papers to have been recorded.

The court did not err in overruling the objection of defendant's counsel to the offer of plaintiff's counsel to read to the jury a portion of the cross-examination of Mr. Baillet, on page 14, and the first two questions on page 15 of such deposition, as such testimony refers to the contract and the assignment thereof, and the drawing of "exhibit A" by the

witness, and shows further that "exhibit A," being the written direction of the plaintiff to the bank, was in duplicate, and a duplicate copy thereof was left with the witness Baillet, as an officer of the bank, at the time of leaving of the assignment and deed by Keith, and is exceedingly material testimony.

Referring to assignment No. 4, we state that the court did not err in sustaining the objection of plaintiff's counsel to the question asked Kjelson, being as follows:

Q. And these transactions that Mr. Baillet carried on in the manner you have already stated, the bank received no benefit from?

By Mr. Shippy: Objected to as irrelevant and immaterial.

By the Court: Objection sustained.

It is wholly immaterial as far as the merit of this case is concerned whether the bank received benefits or not from any transactions of Mr. Baillet. In assignment of error No. 5, each of the court's rulings therein were proper. The court overruled the objection of the attorney for plaintiff to the question, "What did Loomis say in Keith's presence then?" which was a proper ruling, and the court sustained an objection of plaintiff's counsel to the following question, "What did Keith, if anything, say to you in regard to this land in presence of Loomis at that time and place?" and the objection was made that it was wholly contradictory of the terms of the agreement of written instructions left with the defendant bank, to vary the entire terms thereof,—in other words to vary the terms of "exhibit A." Such objection was properly sustained upon this and the other grounds set forth in such objections.

The court did not err in denying defendant's motion for a directed verdict in favor of the defendant, for the reason which we have already suggested in discussing defendant's assignments of error, and for the further reason, that it appears from the admission in defendant's answer that the contract and deed in question were placed of record in Hettinger county, North Dakota, and that therefore plaintiff was devested of whatever title he had. So far as the records were concerned, it is shown to all the world by placing the assignment of contract and deed of record. That the plaintiff had been devested of all his interest and the records show Loomis to be the record owner of said land.

The instructions in paragraphs 7 and 8, complained of by the de-

fendant, have been examined, and are held to be absolutely proper instructions, and in no manner prejudicial to it, and contain a true and correct statement of the law.

Considering plaintiff's specifications, wherein the evidence is alleged to be insufficient to support the verdict in this case, all the matters therein have been thoroughly considered, and we hold that the evidence materially supports the verdict, and we further state that the motion of defendant, notwithstanding the verdict, was properly denied.

We will now analyze the legal propositions involved in this case. We will first state that no estoppel against plaintiff has been pleaded by defendant in this case, and it is the general rule of pleading, where estoppel is relied upon, it must be pleaded, but in this case even if it were pleaded, it would avail defendant nothing, as the plaintiff has not in any manner conducted himself as to be estopped in maintaining this action against the defendant.

The plaintiff delivered his assignment of contract and warranty deed of certain lands to the defendant, to be by defendant delivered to Loomis upon Loomis paying defendant for plaintiff's credit the balance of the purchase price, which was $1,884.59, $40 of the purchase price having already been paid by Loomis to plaintiff. At the same time said assignment and deed were so delivered by the plaintiff to the defendant, plaintiff also delivered to the defendant "exhibit A," or a duplicate thereof, which "exhibit A" contained specific, unequivocal, and absolute instructions from plaintiff to the defendant as to the time, the manner, and the conditions upon which defendant should deliver the assignment of contract and deed to Loomis.

If, after receiving such assignment of contract and deed and written instruction as were contained in "exhibit A," the defendant, in direct contravention to the positive and definite instructions of "exhibit A," wrongfully or otherwise, delivered such papers to Loomis, the plaintiff herein could proceed in one of two ways; namely, he could, if he had chosen to do so, brought an action against Loomis or any other person claiming such land, on the assumption that the delivery by the defendant to Loomis, whether wrongful or otherwise, conveyed no title; or, instead of proceeding in this manner, the plaintiff could have maintained an action against the defendant in damages for the agreed balance of the purchase price of said land; said action for damages being based

upon its total disregard and violation of the positive and definite instructions from plaintiff to defendant, as contained in "exhibit A." See Triggs v. Jones, 46 Minn. 277, 48 N. W. 1113.

The plaintiff in this case has chosen the latter remedy, which he might properly do. In the case of Thornhill v. Olson, cited by appellant as decisive of this case (31 N. D. 81, L.R.A.1916A, 493, 153 N. W. 442), the plaintiff chose to proceed according to the first remedy mentioned herein, and having done so, we are inclined to think exhausted his remedy, and also in this case the depositary delivered the papers in escrow to Thornhill, no doubt at Thornhill's request, and Thornhill could not then very well have a cause of action against the bank for doing what Thornhill had requested the bank to do, and further, in that case, the action was not brought against the depositary. We can agree with the principles of law laid down in the Thornhill v. Olson Case, but in that case if Havlicheck and wife had delivered the papers to the bank in escrow and the bank wrongfully or otherwise delivered the papers to other persons in violation of the positive instructions of Havlicheck and wife, they could have proceeded in an action of damages against the bank, or have proceeded in an action against the persons who got title to the land by such wrongful delivery of such papers, on the theory that no such title passed by such delivery. We think, however, that this latter procedure could only be successfully maintained where the land had not passed into the hands of innocent purchasers for value without notice.

It is not intended that the plaintiff in such case as the one at bar be required to maintain and endure possibly long and expensive litigation to try and recover his title wrongfully or otherwise devested, or apparently, at least, devested, from him by the defendant's wrongful violation of the positive, definite, and written instructions given it by the plaintiff. Plaintiff in this case had been devested of his title, and the same, as the pleading shows, has passed to Loomis, and there is nothing to show but what the title to said land is now held by some innocent purchaser for value without notice. Neither does the defendant bring its books into court to show whether or not defendant did or did not receive the money from Loomis, which Loomis agreed to pay, that is $1,884.59. It seems idle for defendant to put its cashier on the stand to testify without producing the books of the defendant at the same time, which would cer-

tainly show whether the defendant did or did not receive the money, this cashier being one who came into the defendant bank a long time after the transaction in question, and merely answered the question from memory as follows: "Has any money been paid to the bank by or on account of those papers?" Answer: "No, sir." Not much weight can be attached to such testimony in the absence of the books of the bank, which would have spoken conclusively upon this point, and for aught that appears, by competent testimony in this regard, the defendant may have received every dollar of such money, and the least that the defendant could do, and it seems to us that the natural thing for it to do if it did not receive such money, was to produce its books, which would have either shown that the defendant did or did not receive the money. But it is not material in the case to show whether or not the defendant bank did or did not receive the money. If there was no testimony concerning that question, the decision would nevertheless have to be against the bank; for it appears that the plaintiff delivered his papers and title deeds under positive instructions to receive a certain amount of money before delivering them. That, notwithstanding such positive, definite, and written instructions, such papers and title deeds were delivered, and the plaintiff did not receive the money therefor. This, in itself, is quite sufficient to render the defendant bank liable so long as it conclusively appears that plaintiff did not receive the money. The plaintiff did not have to make any further showing on this particular point, and was only required to show that he did not receive the money.

One of the further contentions of the defendant is, that the bank is not bound by any act of Baillet, even though he was the vice president of the bank and one of its directors, and that he had no authority to do any of the acts that he did; and one of its directors with more authority than the cashier in and about the business of such bank assumed to, and did, perform some of the duties about said bank, such as waiting on customers in the regular course of business, and, so far as the public is concerned, he was assuming to act as cashier part of the time; and it must be assumed, if it is necessary to so assume, that this his doing so was with the knowledge and permission of the cashier, and that therefore from his official position as vice president and director of such bank, and by his performing at times some of the cashier's duties, his acts as one of the officials of the bank became and were the acts

of the bank itself. He was an officer of the bank, and by reason of his acting at times as cashier and performing other acts in and about the business of the bank toward customers and the public, all of which was known to the defendant, such actions of Baillet, with the knowledge of defendant, constituted an invitation to the public to deal with Baillet as an officer of the bank. The public had a right to assume that he had authority to do the different acts in and about the bank's business which he did do. It cannot be expected that the public, many of which know little about the business of banking, when they step into a bank to do some business and at times seeing another face at the cashier's window other than the one which is there most of the time, should first be compelled to stop and inquire concerning what authority or about the authority of the person they meet in the bank. They have a right to assume that such a person, being in the bank, performing for the time being the duties of cashier, and performing other acts in and about waiting upon the customers, is exercising proper authority, with the knowledge and consent of the bank, and if such a course were pursued by a customer, it probably would be considered somewhat impertinent. In this case there is not the least doubt but what Keith had a perfect right to rely upon the authority exercised by Baillet as an officer of the bank, and the bank is bound by Baillet's acts.

The following questions asked of Baillet and answered by him would seem to be conclusive upon this point:

Q. Whatever papers were left with you contemporaneously with the leaving of "exhibit A," or the duplicate copy thereof, were retained by you as an officer of the bank and filed in the vault, were they not, on that same date, March 27th, 1911?

A. Yes, sir.

Q. You have nothing at all to do with this transaction, and was in no manner interested in it individually?

A. No, sir.

Q. All of your connection with the drawing up of the "exhibit A," and with the receipt of the papers contemporaneously with "exhibit A," was in the capacity as officer of the bank?

A. Yes, sir.

This question was also submitted to the jury, the court saying in its

instructions: "Now the question is to determine whether or not they (the papers) were delivered to Baillet as an individual, irrespective of his position in the bank, and not to the bank." And the jury are the exclusive judge of the fact, and having found in favor of the plaintiff, they necessarily included the finding that Baillet was acting for the bank.

The court also submitted to the jury the issue of fact: "That it was agreed between the said Loomis, the plaintiff, and Baillet, that in order to complete the sale of said land to one, Carlon, or such other person as Loomis might be able to make such sale, and in order that such transaction could be consummated during the absence of the plaintiff, the assignment of the contract held by plaintiff, together with a warranty deed from the plaintiff to Loomis, should be left with Baillet, who was acting in conjunction with Loomis in the sale of said land," and also submitted the further question of whether the documents were at any time in the custody and under the control of the defendant, and whether or not the defendant had any knowledge relative thereto, and whether or not the documents were under the control of Baillet and Loomis at all times; and after such submission of such matters of fact to the jury, the jury found in favor of plaintiff. There was practically no testimony upon all these questions of fact, but they were facts which were pleaded by defendant in his answer; and all of the facts that were supported by much or little testimony were submitted to the jury, and they made their findings in favor of the plaintiff, and the jury are the exclusive judges of the facts submitted to them, and the court has no right to interfere with their decision upon facts submitted to them. Thomas v. City Nat. Bank, 40 Neb. 501, 24 L.R.A. 263, 58 N. W. 943; Minnesota Mut. L. Ins. Co. v. Tagus State Bank, 34 N. D. 566, L.R.A. 1917A, 519, 158 N. W. 1063.

The defendant has sought to raise in this court the question of ratification and estoppel, although the same does not seem to have been pleaded in the lower court, as required, and before they can be considered here, according to the rulings of this court found in McLain v. Nurnberg, 16 N. D. 144, 112 N. W. 243. But assuming that such questions are presented for the consideration of them, they can avail defendant nothing in this case, and are without any merit whatever.

The multitude of transactions which are continually being transacted

in every community oftentimes require the selection of a third person or party as a depositary through which and by which transfer of papers and important documents may be made, and banks are most frequently used as depositaries on such occasions; and where the party or person assumes to and does act as the depositary, he is absolutely bound by their terms and conditions of the deposit and charged with a strict execution of the duties voluntarily assumed, and such party is liable for damages if he improperly part with the deposit, and this is true whether the depositary received any consideration or not for its services. Citizens Nat. Bank v. Davisson, 229 U. S. 212, 57 L. ed. 1153, 33 Sup. Ct. Rep. 625, Ann. Cas. 1915A, 272; 16 Cyc. 576.

We have considered all the facts set forth by the appellant very carefully, have examined the entire case, and find absolutely no reason for changing the result arrived at in the lower court.

The jury are the exclusive judges of the facts, all of which were fully and fairly submitted to them, and they have made their findings upon those facts, and their findings in this case upon the facts are conclusive.

The judgment of the lower court and the order denying the motion of defendant for judgment, notwithstanding the verdict or in the alternative a new trial, are affirmed, with costs.