## Devinia Griffin, Executrix, Appellant, v. James C. Gay and Fred S. Gay, Appellees.

1. CONTRACTS—*duty of court when correspondence is basis of alleged contract.* Where a contract is alleged to have been entered into by correspondence, it is the duty of the court to determine whether or not the minds of the parties ever actually met and a contract was entered into, whether there was on one side a definite proposal complete in all its terms, and on the other side an acceptance of the proposal with all its terms.

2. ESCROWS—*definition.* An escrow is a written instrument which by its terms imports a legal obligation and which is deposited by the grantor, promisor or obligor or his agent with a third person to be kept until the performance of a condition 'or the happening of a certain event and then to be delivered to the grantee, promisee or obligee.

3. ESCROWS—*when delivery is unauthorized and violation of depositor's rights.* The performance of the condition or the happening of the contingency being essential to a valid delivery of a deed held by a third party in escrow, a delivery before the performance of the condition or the happening of the contingency is unauthorized and a violation of the depositor's rights.

4. ESCROWS—*liability of grantee to grantor on wrongful delivery of deed.* Where a deed has been deposited with a third party in escrow and the depositary delivers it to the grantee without the performance of the condition, the grantee is liable to the grantor for such damages as the grantor has sustained by reason of the wrongful delivery.

5. ESCROWS—*sufficiency of evidence as to intention of parties.* Where a deed to land was delivered in escrow, evidence examined and *held* to show that it was not the intention of the parties that the grantees should deduct the amount of levee assessment bonds chargeable against the property from the purchase price.

6. ESCROWS—*liability of grantees to grantor when deed wrongfully obtained and land sold.* Where the grantees in a deed deposited in escrow obtained the deed, though they deducted from the purchase price the amount of levee assessment bonds contrary to the intention of the parties as shown by the contract, and sold the land to a third person, they are liable to the grantor for the damages actually sustained by reason of the wrongful delivery of the deed to them.

Appeal from the Circuit Court of Pike county; the Hon. GUY R.

WILLIAMS, Judge, presiding. Heard in this court at the April term, 1921. Reversed and remanded. Opinion filed October 25, 1921.

W. E. WILLIAMS and A. CLAY WILLIAMS, for appellants.

L. T. GRAHAM and WILLIAM and BARRY MUMFORD, for appellees.

MR. JUSTICE HEARD delivered the opinion of the court.

This is an action on the case brought by Joel Griffin, deceased, in his lifetime against appellees. While the case was pending, Griffin died and appellee was substituted as plaintiff in his stead. The case was tried before the court without a jury. The issues were found in favor of appellees and judgment rendered against appellant for costs, from which judgment this appeal was taken.

There is but little controversy in the evidence, it being almost entirely documentary.

Joel Griffin, in his lifetime, a resident of Iola, Kansas, was the owner of 132 acres of land near Rockport, in this State. This land was in Sny Island Levee Drainage district and within Atlas Creek subdistrict, upon the lands of which subdistrict, a special assessment for improvements, secured by bonds payable in ten equal instalments from 1923 to 1932, had been levied. Appellee James C. Gay was one of the commissioners of the district and subdistrict who spread the assessment and issued the bonds and was also collector of both districts. Fred S. Gay resided at Lockport.

In the latter part of 1918, Griffin had several applications for the purchase of the farm, among whom was appellee Fred S. Gay, who was writing for himself and his brother, appellee James C. Gay. In reply to Gay's letter appellant wrote as follows:

"Iola, Ks., Dec. 20, 1918.

"Fred S. Gay, M. D., Rockport, Ill.

Dear Sir: Just received your letter of enquirey in regard to the price on my farm there. I will take Sixty Seven dollars per acre net to me for the farm if taken by Jan. 1st, 1919. I have just offered the farm to two parties in Rockport at that price with instructions that the first one to except the proposition would get the farm and I will make you the same offer. I would like to have all cash but will cary four or five thousand on the farm at 6½%. There is know mortgage on farm and I have Abstract showing good merchantible title. If you sell the farm you had better have party make a contract and a small deposit at Bank. Probably some on will take the farm in the next few days and I am giving all the same chance. The first party notifying me of exceptance of proposition will get the farm.

Respectfully yours,
Joel Griffin.

"P. S. Mr. Lynch has posetion until Mar. 1st. But I think I can get him to vacate Jan. 1st. I have rote him in regard to the matter, and will probably here from him in a few days."

To this letter Gay replied offering $65 per acre. December 26, 1918, Griffin wrote as follows:

"Iola, Ks., Dec. 26, 1918.

"Mr. Fred Gay, M. D., Rockport, Ill.

Dear Sir: Have Jus received your favor of 24th. In regard to the farm I have a offer of $67.00 per acre but don't like the terms as well as what you offer. I do not mind caryin a part back on the farm for a short time. Now if you can see your way clear to pay me $67 per acre you had beter wire me for I am liable to get word from the other parties at any time. Wire at my expense and if it is sold I will wire back to you. I am sending my abstract to Barry with instructions to have it sent to the Bank at Rockport. My title is absolutely all right. I had the cort pas on it and there is no encumberence on the land. I realise that the land is worth much more than I am

asking for it but it is all I have in Ill. and I do not care to bother with it. If I sell the land I want to sell the crop and will probably come out about the first of the year. I will phone you this evening for fear the other parties get ahead of you. I ofered to carry 4000.00 for 5 years with them and I do not want to do that if I can help it. They offered me my price if I would cary 5000.00 5 years.

Respectfully yours.<br>
Joe. Griffin."

December 28, 1918, Fred S. Gay wrote Griffin as follows:

"Rockport, Illinois, Dec. 28, 1918.

"Mr. Joel Griffin, Iola, Kan.

Dear Sir: Pursuant to your telephone message and your letter received this morning I have deposited with the Bank here subject to your order after you deliver the deed in escro, $500.00.

"I have no doubt but the title is absolutely good but of course one always wants to examine an abstract and make sure, so I will get the abstract as soon as it arrives here and look it over and probably will be ready to take up the deed and pay balance of money as soon as deed arrives here.

"You will no doubt receive a letter from the banker on same mail as this telling you of the deposit and reciting the terms as I explained them to him. Trusting my action in the matter is satisfactory to you and that you will execute deed at once, I am

very Truly yours,,<br>
Fred S. Gay."

On the same day L. M. Smith, cashier of the Minier Bank of Rockport, wrote Griffin as follows:

"Rockport, Illinois.<br>
Dec. 28th, 1918.

"Mr. Joel Griffin, Iola, Kansas.

Dear Sir: J. C. & Fred S. Gay have today deposited with this bank $500.00 subject to your order on the following conditions:

"1st. You are to make a good and sufficient warranty deed and deposit same in this bank in escro.

Deed to be made to James C. and Fred S. Gay and cover the farm owned by you situated in Sections 28 & 33 Township 6S 5W in Pike County, Illinois.

"2nd. You are to furnish to J. C. & F. S. Gay an abstract showing merchantable title.

"3rd. Said deed to be retained by this bank until the purchasers J. C. & F. S. Gay have had a reasonable time to examine and pass on the title which if found merchantable they are to deposit with this bank subject to your order the balance of the purchase price which it is understood to be $67.00 per acre. It is also understood and agreed that they may execute and deliver a mortgage for $4000.00 on said farm in lieu of that amount in cash if they see fit. Said mortgage to be for a period of not to exceed two years and draw interest at 6% payable annually.

Yours truly,

L. M. Smith, Cr."

January 2, 1919, Mumford and Mumford of Pittsfield, appellees' attorneys, wrote Griffin as follows:

"William and Barry Mumford, Attorneys and Counselors at Law,
Pittsfield, Illinois.

January 2nd, 1919.

"Mr. Joel Griffin, Iola, Kansas.

Dear Sir: At a very short conference with Dr. Fred S. Gay and Mr. James C. Gay, of Rockport, in this County, this afternoon, we were directed to draft and forward to you for execution and delivery to the bank at Rockport, in escrow for them, at an early date, a conveyance for about 130 acres of land on the Mississippi bottoms, in this County, the descriptions to be taken from the deed to yourself from O. W. Holmes, which, together with some correspondence were left with us. We have done as directed by them, and are herewith enclosing the same to you. We have placed the consideration at $1.00, etc., because they seemed to think it unnecessary to disclose on the record just what they paid for it. It is, as we understand it, desired by them that you shall execute and send forward to the bank at Rockport, this deed, as soon as possible,

together with your particular directions to the bank as to the delivery to the Gays. We assume that the Abstract will be submitted to us in a short time, and we hope to expedite the closing of the transaction. Please see date is inserted, and name of wife if you are married. And acknowledge properly. Then forward to bank at Rockport, with directions as to when and how it is to be delivered to the Gays as per contract.

> Yours, etc.,
> William and B___ Mumford,
> W. M."

January 7, 1919, Griffin wrote the Minier Bank as follows:

> "Iola, Kansas, January 7, 1919.
> "Minier Bank, Rockport, Ill.
> Gentlemen: I enclose herewith Warranty Deed, signed and acknowledged by myself and wife, conveying to James C. Gay and Fred S. Gay, 132.07 acres in your County, the purchase price on same to be $67 per acre, which I figure to be $8,848.69. They are to give me a mortgage for $4,000 and pay the balance in cash.
>
> "You are hereby authorized to deliver the enclosed deed to the purchasers upon their delivering note and mortgage for $4,000 covering the land conveyed made payable to me, and payment of the balance, $4,848.69 in cash.
>
> "Out of this cash payment you may deduct $9. for revenue on the deed and pay for continuing the abstract to date, and remit draft for the balance to me.
>
> "The note and mortgage are to be written for a term of two years, and bear interest at the rate of 6% payable annually.
>
> > Yours very truly,
> > Joel Griffin.
> No. 701 N. Washington Ave., Iola, Kansas."

January 10, 1919, appellee James C. Gay sent Griffin the following:

> "Sny Island Levee Drainage District
> Office of
> J. C. Gay, Collector.
> > Rockport, Illinois, 1-10-19.

"Mr. Joel Griffin, Iola, Kansas. .
Dear Sir: The annual Sny tax on your land is $ 25.34
        Levee special                 67.91
        Interest of Atlas Creek Bond     153.11

            Total                 $246.36
           Yours truly,
            J. C. Gay, Col."
   To this Griffin replied on the bottom of the same
sheet as follows:
   "I do not understand why I have $153.11 interest
to pay on Atlas Creek bond. I only wish to pay that
part for 1918. If there is a balance due me send me
check and send tax receipt to Fred S. Gay, Rockport,
Ill. and send explination. Is this interest in advance.
           Respectfully yours,
            Joel Griffin."
   January 17, 1919, appellee Fred S. Gay wrote Griffin
explaining the delay of the abstractor, in reply to
which Griffin wrote as follows:
           "Iola, Kan. Jan. 18, 1919.
"Mr. Fred S. Gay, Rockport, Ill.
Dear Sir: Just received your letter of the 17th. I
am at a loss to know why a abstractor should hold
up a deal for two weeks or more where there is onley
4 Or 5 entery to make at the most and would not re-
quire more than one half hours time and the los to
me is at least $12.00 on account of delay. I am send-
ing money to pay taxes for 1918 with instructions to
send receipt to you.  *  *  *
           Very truly yours,
           Joel Griffin.
   "P. S. Jus deduct the 1918 tax from the amount
due me wen you send draf. I think that will be ex-
ceptable wit the Bank if you show them this letter.
                 J. G."
   January 27, 1919, Griffin wrote the following:
           "Iola, Ks., Jan. 27, 1919.
"Dr. Fred S. Gay, Rockport, Ill.
Dear Sir: Your letter of the 24th at hand.  *  *  *
I am pleased to know that you contemplate paying
the hole amount and I would like to get the money

just as soon as posiable. The money is costing 6%. If you are not needing the abstract before you get the money, you would be perfectly safe in sending it before you have the abstract examined for it has been pased on by a pompaten abstractor down to the time we had the title corected by the cort and all that it lacking to show is the procedings of the cort. And I am giving you a warentee deed and I am perfectly good for the amount.

Respectfully yours,<br>Joel Griffin."

February 8, 1919, L. M. Smith, cashier, wrote Griffin as follows:

"MINIER BANK OF ROCKPORT<br>Rockport, Illinois

Feb. 8th, 1919.

"Mr. Joel Griffin, Iola, Kansas.
Dear Mr. Griffin: Messrs. James C. and Fred S. Gay, on my assuring them that the deed from you with general covenants of warrantee is here, have paid on account the sum of five thousand dollars which I am herewith handing you.

"Their attorney has not as yet got to it completely but their understanding from him is that he is going to pass the title subject to deductions for tax liens, revenue stamps, abstract fees, etc.

"The amount of the encumbrances have not been precisely ascertained but as soon as such amount is ascertained they will be deducted from the remaining balance, the net balance will be paid and the deed will be delivered as per contract.

Yours truly,<br>L. M. Smith, Cashier."

February 15, 1919, Smith wrote Griffin as follows:

"MINIER BANK OF ROCKPORT

T. L. Minier, President,
L. M. Smith, Cashier,
W. E. Martin, Asst. Cashier.

Rockport, Ill., Feb. 15th, 1919.

"Mr. Joel Griffin, Iola, Kansas.
Dear Sir: I enclose draft to cover balance due you

to complete the contract between you and J. C. and F. S. Gay. The attorney's statement is enclosed to show you how the balance was arrived at. The deed has been delivered to said parties.

Yours truly,

L. M. Smith, Cr."

The attorney's statement inclosed in this letter was as follows:

"William and Barry Mumford,
Attorneys and Counselors at Law,
Pittsfield, Illinois.

February, 12th, 1919.

"Messrs. J. C. and Dr. Fred S. Gay, Rockport, Illinois.

Gentlemen: We have examined the abstract of title to the Joel Griffin lands in Lots 3, 4 & 6 in survey of J. G. Adams farm, as it appears in Plat Record A, page 210 of the records of Pike County lands, and have concluded to pass it and recommend its acceptance, with the following notations:

"The following liens and encumbrances exist of record against this land, to-wit: Atlas Creek sub-District Special Assessment $2,551.87 Interest on same from Mch. 5, 1918, to Feb. 17, 1919, at 6% per annum     144.60

Last Sny Special Assessment     67.91

Interest on same from December 26, 1918, to Feb. 17, 1919, at 6% per annum     .55

Sny Annual for 1918     25.34

Total of encumbrances     $2,790.27

"To which deductions should be added, under your contract, the following items, to-wit:

Abstract charge     $27.00

State and County Tax     37.84

Revenue Stamps     9.00

Total additional deductions     $73.84

\*     \*     \*     \*

"It is recommended that you pay to Mr. Smith, of the Bank, who is the present custodian of the warranty

deed to yourselves, the above net sum of $5,984.58, and take up the deed, you to pay off and satisfy the above encumbrances and deductions.

Yours, etc.
William and Barry Mumford
W. M.''

February 17, 1919, attorneys for Griffin wrote the Minier Bank as follows:

''Minier Bank, Rockport, Ill.
Attention L. M. Smith.
Gentlemen: Mr. Joel Griffin of this city submits to us a matter of sale of his lands which has been started between himself and James C. and Fred S. Gay, 132.70 acres. We have not seen a copy of his contract, but we notice from the correspondence that he forwarded to you a warranty deed, January 7, 1919, with specific instructions as to what should be collected before the deed should be delivered. You doubtless have that letter and we will not need to send you a copy. It seems from your remittance that you have allowed a deduction of $2,790.27 on account of some sort of a special improvement tax. This, we assume from the letter is some kind of a levee proposition.

''When Mr. Griffin sent the deed he did not understand that he was to pay this tax or he would not have made the deed and you will see by reference to his letter that he had no intention of paying this assessment out of the price of the land. His idea was that the party taking the land would be getting the benefits and was the one who should pay and he had no intention whatever of allowing the deed to be delivered for any less than the amount of money to be paid to him as specified in his letter of January 7, 1919.

''He herewith returns to you draft for $5000.00 dated February 8, 1919, No. 14034 and draft for $984.58, dated February 15, 1919, no. 14112 and asks that you either return him his deed and contract or remit to him the full purchase price in money or the amount specified by his contract and a good first mortgage lien for the balance as therein stated.

Yours very truly,
Ewing, Gard & Gard.
Attys.

SAG*MD''

To this letter the bank replied as follows:

"Messrs. Erving, Gard & Gard, Iola, Kansas.
Gentlemen: Replying to yours of 17th inst., concerning land deal between Mr. Griffin and Messrs. Gay and Gay, we are sorry not to be able to comply with your directions. That is to say,—We cannot return the deed to Mr. Griffin, for the reason that it has already been delivered, as we had already written him; and Messrs. Gay and Gay have refused our demand for its return; neither are we able to remit the consideration demanded by you, in cash or cash and mortgage, for the reason that Messrs. Gay and Gay insist that the arrangement between themselves and Mr. Griffin clearly justified them in deducting from the consideration agreed upon, such sums as are necessary to be deducted to protect the land from outstanding liens and encumbrances. And we must confess this was our interpretation and understanding, also, in view of other correspondence.

"We are very sorry not to be able to comply with your direction. We have done our best in that respect, and stand ready to do all in our reasonable power to meet the wishes and directions of Mr. Griffin and of his attorneys. Meantime, we are holding, unwillingly a considerable sum of money belonging to somebody, and we wish to be relieved of the responsibility at an early date.

> Yours very truly,
> Minier Bank of Rockport,
> L. M. Smith, Cashier."

The bank delivered Griffin's deed to appellees and they conveyed the land to Jerry Adams by deed dated February 15, 1919. This latter deed contained the following clause: "This deed is given subject to assessment of benefits of Atlas Creek sub-division, confirmed by County Court of Pike County, Illinois, March 5th, 1918."

Adams testified that pending the negotiations between Griffin and the Gays he purchased the land from the Gays and about the 10th or 12th of February he

paid them $10,000 in cash and agreed to assume the payment of the assessments of the Atlas Creek subdistrict. He further testified that while he was negotiating with them for the purchase of the land, James Gay, in the presence of Fred S. Gay, told him that they would deed it to him just as it was deeded to them by Griffin.

We have quoted thus extensively from the evidence because it is from a perusal of these documents read in the light of the circumstances and conditions of the parties that we must determine whether or not a valid contract for sale was ever entered into between the parties, and if the minds of the parties ever did meet just what the resultant contract was.

Where a contract is alleged to have been entered into by correspondence, it is the duty of the court to determine whether or not the minds of the parties ever actually met and a contract was entered into, that is to say, whether or not on the one side was a definite proposal complete in all its terms and on the other side an acceptance of the proposal with all its terms. *El Reno Wholesale Grocery Co. v. Stocking*, 293 Ill. 494; *Brach v. Matteson*, 298 Ill. 387.

From a perusal of the correspondence in this case, it is somewhat doubtful whether the minds of the parties ever met as to all the details of the alleged contract, but if there was a contract between the parties it was that Griffin was to make a warranty deed to appellees; that the consideration stated in the deed was to be $1 and not the real consideration; that the sale was to net appellant $8,848.69, less certain deductions hereinafter mentioned; that appellees were to give a mortgage for $4,000 and the balance in cash, which part of the consideration was later modified to provide for all cash; that the deed was to be placed in the hands of the Minier Bank of Rockport, in escrow, to be delivered upon appellees paying to the bank for appellant $8,848.69, in cash, less the 1918 taxes, and

that a draft for the balance, less $9 revenue stamps on the deed and an amount for the continuance of the abstract, was to be sent appellant.

Appellant deposited the deed in escrow with the bank with specific directions with reference to its delivery to appellees. Appellees did not comply with the conditions of the escrow but deducted from the amount of $8,848.69, $2,551.87, the amount of the Atlas Creek subdistrict special assessment and other amounts, and only paid the bank in cash $5,984.58 in violation of the terms of the escrow. Appellees did not pay off the $2,551.87 special assessment, but immediately deeded the land to Adams, subject to the assessment as they told Adams the same as they got it from Griffin. An escrow has been defined to be a written instrument which by its terms imports a legal obligation and which is deposited by the grantor, promissor or obligor, or his agent, with a third party, or stranger, to be kept by the depository until the performance of a condition or the happening of a certain event and then to be delivered over to the grantee, promisee or obligee. *Main v. Pratt*, 276 Ill. 218.

The performance of the condition or the happening of the contingency being essential to a valid delivery of a deed held by a third party in escrow, a delivery before the performance of the condition or the happening of the contingency is unauthorized and a violation of the depositor's rights. *Forcum v. Brown*, 251 Ill. 301; *Osby v. Reynolds*, 260 Ill. 576.

Where a deed has been deposited with a third party in escrow and the depository delivers it to the grantee without the performance of the conditions of the escrow, the grantee is liable to the grantor for such damages as the grantor has sustained by reason of the wrongful delivery. *Eichlor v. Holroyd*, 15 Ill. App. 657; *Bank of Center v. Cain*, 64 Colo. 285, 170 Pac. 961; *Keith v. First Nat. Bank of New England*, 36 N. D. 315, 162 N. W. 691.

We are clearly of the opinion, from a consideration of all the evidence in the case, that it was not the intention of the parties that appellees should deduct the amount of the assessment bonds from the purchase price of the property.

Appellees having obtained the deed from the bank in violation of the terms of the escrow and having sold the land to a third party and thereby deprived appellant of his land, we are of the opinion that a right of action thereby accrued to appellant against appellees for the damages actually sustained by reason of such wrongful delivery and that the court erred in holding otherwise. The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*