SEVIER COUNTY BANK v. STATE ex rel.—69 S. W. (2d) 622.

Eastern Section. December 16, 1933.

Petition for Certiorari denied by Supreme Court, March 10, 1934.

A. M. Paine, of Sevierville, for appellant.

J. W. Cooper, Assistant Attorney-General, and Jno. O. Morrell, of Sevierville, for appellee.

PORTRUM, J.  This suit was instituted by the Tennessee Great Smoky Mountains National Park Commission (chapter 54, Pub. .Acts 1927), created for the purpose of acquiring land to establish a park, and by later authority to reconvey the land to the United States government for the purpose of creating the Great Smoky Mountains National Park here, against the Sevierville bank, to recover for the bank's negligence in handling the park funds.  In the acquisition of these mountain lands, the commission appointed purchasing agents to obtain the land by purchase if possible and avoid condemnation proceedings authorized under the law; it was the practice of these purchasing agents to take options upon the land, pending an examination of the titles by the abstract attorneys employed by the commission.  The commission's office was located in Knoxville, and, when the abstracts were approved by the assistant attorney-general in charge, deeds were drawn and sent, accompanied by the commission's check for the purchase price, to a bank in the county where the land was located, for delivery to the vendor when the deeds were properly executed.  The proper execution of the deed was evidenced by the certificate of a title agent who resided in the county, and whose duty it was to see that the deed was executed according to the form required by law and that all incumbrances noted upon the abstract of title had been properly released, all taxes paid, and no liens had been placed of record since the date of the abstract.  When the deed was delivered to the bank,

accompanied by this certificate of the commission's agent, the funds were then paid over to the vendors, and the deeds transmitted by the bank to the commission.

At the time of the transaction in question there was located in Sevier county, and in the town of Sevierville, two or more banks, and the commission had been transacting its business through the First National Bank, and, while the commission paid nothing to the bank for this service, the bank had the advantage of its competitors in that the funds passed through its hands, and perhaps the vendors deposited the purchase money in the bank. At any rate, it was considered a desirable banking item.

In January, 1929, the cashier of the Sevier County Bank, Mr. S. L. Atchley, wrote a letter to the assistant attorney-general in Knoxville, who was handling these matters, calling his attention to the fact that these funds were sent almost exclusively to the First National Bank for distribution, and requested a division of this business, calling attention to the custom of a division of state funds between the banks of the county, and he stated that his bank was willing to do anything that was required of it. In reply the assistant attorney-general, representing the commission, agreed to a division of this business, and began to send business through the bank. The cashier again wrote thanking the commission for this business, and stated, "A bank is always anxious to have all the money possible come through their bank."

The first letter of instructions to the bank was written in February, 1929, as follows:

"I am enclosing you some deeds and checks to be held in escrow and delivered according to the terms of the letters accompanying each one.

"Before closing any of these matters, please get in touch with Mr. John O. Morrell, and ask him to see that there are no changes in the title since the date of the abstract which is furnished to him at the same time these matters are sent to you, and when he reports to you that there are no liens, except those mentioned in the letters of instruction, they may be closed.

"The deeds should immediately be filed for registration in order to protect the State against any lien judgment or other encumbrances which might be placed against the land between the time of closing and the time the deed is filed for record. . . .

"The taxes for 1929 became a lien against the property on the 10th of January of this year, and while we are going to try to get a bill passed by the Legislature relieving these taxes, until that is done, you will retain an amount sufficient from the purchase price in each instance to pay the taxes for the year 1929.

"We have heretofore used the previous year as a basis, the sum

will be remitted to us and if we get a bill passed it will be refunded to the landowner."

On April 25, 1932, the deed and check herein involved were sent to the defendant Sevier County Bank with the following letter:

"I herewith enclose you a check for $2050, payable to M. B. Branam, together with a deed to be executed by him, conveying to the State 80.6 acres in the Seventeenth District. If Mr. Branam is a single man that fact should be noted in the caption of the deed. If he is a married man, the name of his wife should be inserted in the caption of the deed and she should be required to sign the deed.

"Before the check is delivered the taxes for the years 1927, 1928, and 1929 must be paid and a sum sufficient to pay the taxes for the year 1930 deducted from the purchase price, and remitted to this office."

The check referred to was made payable to the vendor, M. B. Branam, and a copy of the letter written the bank was sent to Mr. B. E. Rippy, who had succeeded Mr. Morrell mentioned in the above correspondence as the representative of the commission, and he used the copy of the letter as his instructions; he stated, "and my duty was whatever was called for in that letter; I had examined the record to see if there had been any change in the title after the date of the abstract; and to see if the deed was properly executed." The agent Rippy was also a notary public and sometimes took the acknowledgments to the deeds, but this was not required, and his duty as agent was to see that the deeds were properly executed and the certificate of acknowledgment was in proper form.

The bank received the letter of instructions, but it did not contain the address of Mr. Branam, so the bank wrote him a letter, addressed to Sevierville, R. F. D., and omitted the route number. In this letter the bank solicited a deposit by stating to Mr. Branam that, if he did not need the money, he could leave it with the bank until he needed it. Two or three weeks passed and the bank received no reply to this letter, and Mr. Branam did not appear to execute the deed. The park commission wrote the bank insisting that the matter be closed with dispatch. The cashier, Mr. Atchley, did not know Mr. Branam personally, and so he made inquiry of a Mrs. Price, whom he knew to have been a Branam, and she told him that Mr. M. B. Branam lived with his daughter in the city of Knoxville, and gave him the name of the street upon which she lived, but she could not furnish him with the house number. He then wrote Mr. M. B. Branam at Knoxville, giving the street address. In this letter he urged Mr. Branam to come to Sevierville and execute the deed and receive the purchase money. This letter was delivered, and within a few days Mr. Branam, accompanied by two of his sons, appeared at the bank in Sevierville, and stated he had come to execute the deed and receive the money. He was taken

by Mr. Atchley to the courthouse and introduced to Mr. Rippy as Mr. M. B. Branam who had come to execute the title papers, and with this introduction Mr. Rippy made inquiry of Mr. Branam whether or not he was a single or a married man, and, being informed that he was a single man, took his acknowledgment to the papers, and made the further investigation required of him in his letter of instructions, and then executed a certificate, describing the land by the abstract number, to-wit, abstract No. S 123 C, and further certifying "That all encumbrances shown in said abstract have been released of record; that all judgments affecting the title to said land has been satisfied of record, that all taxes assessed against said property have been paid; . . . that a proper deed executed by M. B. Branam, a single man, dated the 17th day of May, 1930, conveying said land to the State of Tennessee, was filed for record in the office of the Register of Sevier County at two o'clock P. M., on the 17th day of May, 1930."

Mr. Rippy, the agent, accompanied by Mr. Branam and the cashier, then returned to the bank, and the cashier required Mr. Branam to indorse the draft of $2,050; he then deducted the taxes of $45, and paid Mr. Branam in cash $5, and issued to him a cashier's check for the sum of $2,000 for the balance. This closed the transaction, and the deed was transmitted to the park office in Knoxville.

A few weeks later it was discovered that the M. B. Branam who executed the deed was not the M. B. Branam who owned the land, and that this one was an impostor and practiced a fraud upon the bank. He was a cousin of the M. B. Branam who owned the land, and had lived on an adjoining tract of land to the one conveyed. When these facts were discovered, the bank traced its paid cashier's check, and discovered it had been paid by a bank in Maryville, Tennessee, and that $1,000 of the fund remained on deposit in this bank, which it was able to recover. The park commission then prepared another deed for the rightful M. B. Branam, and forwarded it to its agent at Sevierville, and Mr. Branam came in and executed it, joining with his wife in its execution, but before executing this deed he informed the agent that he did not own the fee in the land, but only owned a life estate, for in 1927 he had conveyed the remainder to his children, reserving only a life estate in the land. This link in the chain of title did not appear in the abstract. His children were of age, with the exception of two, and the ownership of the minors made it necessary that a bill in chancery be filed to ratify the sale, and the money distributed according to the interest of the parties under a decree of the court. This course was followed, and the second deed was ratified, and of the purchase price the bank paid in the thousand dollars recovered, and the park commission was required to pay in another thousand dollars; the balance of

the purchase money, or $50, having been expended in the payment of taxes.

The park commission having made repeated demands upon the bank to repay this money with no result, this suit was instituted to recover the fund. The bill sets out the material facts and seeks a recovery upon the theory that the commission's check for the purchase money was placed with the bank in escrow, and the bank violated the escrow agreement by delivering the check to an impostor, without sufficient investigation, and that the bank is liable upon the further grounds that it cashed the commission's check upon a forged indorsement. These allegations were put at issue by the answer. The chancellor filed a memorandum opinion holding the agreement in escrow, and the defendant guilty of negligence in delivering the check to an impostor, without sufficient investigation, in violation of the agreement. But he went further and found that, if the agreement were not an escrow, but a bailment, then it was not a gratuitous bailment, and the defendant was liable because of its negligence. He was also of the opinion that the defendant was liable because it had cashed the check upon a forged indorsement. From a decree embracing these holdings, the defendant has appealed to this court.

■■ We do not think the agreement between the bank and the commission an escrow, because it is lacking in many of the essentials of an escrow, and of these mentioned we think it sufficient to discuss one only. "A deposit made by the depositor alone will not be sufficient to constitute a valid escrow; it must be made by the agreement of all the parties to the escrow." "Escrows," 21 C. J., sec. 12; Taylor County v. King, 73 Iowa, 153, 34 N. W., 774, 5 Am. St. Rep., 666. In this case the vendor had no knowledge of the agreement until after this transaction was closed, and there is nothing to show that he ever impliedly consented to it. In fact it is most certain that he did not. But the question of whether this agreement was an escrow or a bailment does not seem to us important, since the right of title to the property does not arise, and the suit is grounded upon negligence. The degree of negligence might be involved, but in this case we think the degree of negligence is not important, as will hereafter appear.

The relationship created by the facts of this case is that of bailment; and created the bank the depositary of the thing bailed, i. e., the draft in which M. B. Branam was named as payee; the care required of a bailee is graduated according to the classification of the bailment, and a gratuitous bailment requires the least care ordinarily. So the defendant thinks it important that it be classified as a gratuitous depositary, but it must be remembered that the care required even in a gratuitous bailment is governed by the character and value of the res deposited. The care required in the

bailment of a rock crusher is necessarily less than that required in the bailment of money or negotiable instruments. And, while it is generally said that a gratuitous depositary is liable only for his gross negligence, yet gross negligence, in this particular classification, has been defined as the absence of "that care which persons of ordinary prudence in the depositary's situation and business usually exercise in the keeping of like property of their own; the care which the property in the situation demands." "Depositaries," 8 C. J., p. 568; Preston v. Prather, 137 U. S., 604, 11 S. Ct., 162, 34 L. Ed., 788. So, in the handling of money or negotiable paper, the care required of a gratuitous bailee and a bailee for recompense is so near the same that the distinction is not important. Especially is this true in the case of banks.

"The multitude of transactions which are continually being transacted in every community oftentimes require the selection of a third person or party as a depositary through which and by which transfer of papers and important documents may be made, and banks are most frequently used as depositaries on such occasions; and where the party or person assumes to and does act as the depositary, he is absolutely bound by their terms and conditions of the deposit and charged with a strict execution of the duties voluntarily assumed, and such party is liable for damages if he improperly part with the deposit, and this is true whether the depositary received any consideration or not for its services. Citizens' National Bank v. Davisson, 229 U. S., 212, 57 L. Ed., 1153, 33 S. Ct., 625, Ann. Cas., 1915A, 272; 16 Cyc., 576." Keith v. First National Bank, 36 N. D., 315, 162 N. W., 691, 696, L. R. A., 1917E, p. 901.

It is therefore unimportant that we determine if this be a gratuitous deposit. We think the rule of care required in this case is that of due care exercised by the ordinarily prudent man. And, in cases where due care is lacking on the part of the depositary, he still can escape liability because of the contributory negligence of the bailor. Tennessee Hermitage National Bank v. Hinds, 1 Tenn. App., 508. "Nor is a bailee liable for the losses due to the contributory negligence of the bailor, his agent or servant." "Bailment," 6 C. J., p. 1122, sec. 61; Wall v. Gillin Printing Co., 21 Misc., 649, 48 N. Y. S., 67; Boltart v. Winnipeg Industrial Exhibition Assoc., 17 West. L. R., 372.

After a careful review of the evidence of this case, we are not content to say that the bank did not exercise that care the ordinarily prudent person would have exercised under like circumstances. It is true it did not question the impostor to discover his identity, and we believe only the exceedingly cautious person would have done so, for the reason that the law so securely safeguards the identity of a grantor in a deed by the statutory acknowledgment

626

required of the officer taking the acknowledgment. And the fact that the bank official introduced the impostor to the notary did not justify the notary in disregarding the statutory requirements in taking the acknowledgment. It is not shown that the bank official knew what duties were required of the notary by the law. We measure the care required of the bank in this case by the surrounding facts and circumstances; had the depositor been a person not able to protect his own interests, and the depositary known of this fact, then the degree of care would have been greater. But, in view of the fact that the state is well able to protect its rights through its distinguished officers, we think the bank was relieved of that degree of care that might be required of it under different circumstances. The bank was not instructed to determine the identity of the vendor. These instructions are unnecessary where the notary performs his duty. This may account for the absence of the instructions.

██ We are further of the opinion that the complainant cannot recover because of its contributory negligence. We view this transaction from its inception and take into account the entire negotiations. We think the mistake could not have happened but for the omission of many acts that should have been required by the park commission; we list these omissions:

(1) The option agreement contained information showing if the landowner was married; this information was not secured by the purchasing agent, and, if it had been, it would have shown that M. B. Branam was a married man and the impostor could not have succeeded, because he was a single man. The abstract of title, while not in the record, should have shown the title of the present owner and whether it was incumbered by the wife's interest. Had it done so, or if it did so, the draftsman who drew the deed should have included the wife's name in the instrument.

(2) The abstract was imperfect, because it did not show the conveyance by M. B. Branam of the remainder interest to his children by deed of 1927. And had the abstractor discovered this fact the mistake could not have occurred.

(3) The commission did not furnish the bank with the address of the vendor.

(4) The agent who made the certificate of transfer certified that the deed had been regularly executed, when he, as a notary public, had taken the acknowledgment and he was not personally acquainted with the grantor. It is true when acting as a notary he was not acting in the capacity of agent, but as agent he acquired knowledge of his official act.

██ The commission seeks a recovery upon the ground that the bank honored a forged indorsement and guaranteed all prior indorsements when it indorsed the draft for collection. This seems

to be an assertion of two distinct causes of action growing out of the same transaction; we think only one cause of action arose, and, when the bank accepted the executed deed and delivered the draft, the rights and liabilities of the parties were then fixed. At that time the commission's agent delivered the draft to an impostor, and, if he had taken it to another bank and cashed it, no liability would have arisen against the bank, because it honored a forged indorsement, for the reason that the drawer of the draft delivered it to the impostor with the intent that the impostor cash it. This question was settled in the case of Commercial Bank & Trust Co. v. Southern Industrial Banking Corporation, 16 Tenn. App., 141, 66 S. W. (2d), 209.

We are of the opinion that the appellee, the complainant below, has failed to carry the burden and establish a liability against the defendant below.

The decree of the chancellor is reversed, and the case is dismissed, with costs.

Snodgrass and Thompson, JJ., concur.