TENNESSEE HERMITAGE NATIONAL BANK v. M. E. HINDS.

Middle Section.   August 29, 1925.

Certiorari denied by Supreme Court January 16, 1926.

1. **Appeal and error.  Assignment of error must be specific.**
     To say that the court erred in overruling a demurrer because the declaration did not state a cause of action is too indefinite and will not be considered on appeal.

2. **Pleading.  Declaration held good.**
     A declaration which states the facts upon which plaintiff predicates his charge of negligence, and which if proven would justify the court in submitting the case to the jury, is good.

3. **Banks and banking.  A bank is a bailee of bonds in customers safety deposit box.**
     The relation of bailor and bailee exists between bank and its customer in regard to the contents of depositor's safety deposit box, although the bank does not know and is not expected to know the contents of the box.

4. **Banks and banking. Bank is a bailee for hire although it does not charge its customers rent for safety deposit box.**
    Where a bank did not charge its customers rent for a safety deposit box but charged non-depositors, held there was a valuable consideration for the use of the box and the bank was a bailee for hire.

5. **Bailment. Bailee for hire must use ordinary care to safeguard property.**
    A bailee for hire must exercise ordinary care in safeguarding and preserving the property of bailor.

6. **Banks and banking. Bank must use ordinary care in safeguarding property in its safety deposit boxes.**
    A bank is a bailee for hire and must use ordinary care for the safety of the things deposited in its safety box.

7. **Appeal and error. Instructions.**
    It is not error to refuse an instruction which is fully covered in other instructions.

Appeal in Error from Third Circuit Court, Davidson County; Hon. E. F. Langford, Judge.

Affirmed.

Pitts and McConnico, of Nashville, for plaintiff in error.

Norman Farrell, of Nashville, for defendant in error.

HEISKELL, J.   Hinds sued the Tennessee Hermitage National Bank of Nashville to recover the value of five United States Liberty Bonds of $100 each, which plaintiff claims were taken from his safety box in the vault of the defendant. There was a verdict in favor of plaintiff for $610.12, from which defendant has appealed and assigned errors.

The declaration states the facts, about which there is very little controversy. There was a demurrer to the original declaration, which was sustained and an amended declaration was filed, which was demurred to, and the demurrer overruled. Then defendant filed a plea of not guilty. The original and amended declarations are as follows:

"The plaintiff sues the defendant for $600 which sum it owes him by reason of the following facts:

1.

That the defendant is an incorporated banking institution, organized under the Acts of Congress as a National Bank. That as part of its banking business and in its banking house it has a vault wherein are numerous safe deposit boxes for the safe keeping of money, securities, and valuable papers, etc. These safe deposit boxes are rented by the defendant, but to persons who keep an account at said bank and do their banking business there, in order to attract their patronage and in consideration thereof, the defendant extends without charge in money,

the use of its safe deposit boxes, agreeing and contracting to exercise due and reasonable care to guard, protect and to prevent access to the contents of said safe deposit boxes by any but the true owners.

### 2.

"While this situation existed, the plaintiff some years ago became a depositor at the defendant bank and did his banking business there and, in consideration thereof was allotted a safe deposit box in its safety vault by the defendant and furnished with a key to same. There was also a 'master key' and it was necessary to use said 'master key' as well as said customer's key jointly to unlock one of the safe deposit boxes.

### 3.

"At the time of allotting plaintiff said safe deposit box, the defendant did not even put plaintiff's name down for it; kept no record of it and did not keep a record of the times when and persons by whom access was had to said safety vault. The course of procedure in that regard was, a customer, desiring to enter his safe deposit box, entered the bank, walked through the swinging door at the back of the bank, past the telephone operator's desk and into the vault. The 'master key' was tied on a ribbon and sometimes on to a stick and hung on one of the spikes at the top of the steel-grated door leading into the safe deposit vault and was there for anybody to use. This door was likewise unlocked in the day time and any one could and did enter the safe deposit vault without the aid, permission or presence of any bank official or employee. The only time any bank officer ever accompanied plaintiff into this safe deposit vault was when he originally was assigned a box and in June, 1918, after plaintiff's bonds were taken from said box, as hereinafter will be shown.

### 4.

"When plaintiff originally took the box some years ago he told defendant's officers that his friend D. L. Weatherhead was to have one of the two keys to the box and use of the same and defendant consented thereto. In October, 1917, Weatherhead left Nashville, surrendered his key to plaintiff and ever since then both said keys have been solely and constantly in plaintiff's possession.

### 5.

"Thereafter plaintiff deposited five Liberty Bonds of $100 each in his safe deposit box at said bank. These bonds were pur-

chased at or through defendant bank. There were two bonds of $100 each of the first Liberty Loan, bearing three and one-half per cent interest, the first coupon being clipped on each one—next coupons were due about June 15, 1918, as complainant thinks. Three other Liberty Bonds of second issue, each of $100, and their numbers being 1742317, 1742318, 1742319, were likewise deposited in said box. No coupons were clipped on last three, as plaintiff discovered their loss only when he went to open his box to see when the coupons were due. This was early in June. Between the times plaintiff put the bonds in the safe deposit box and his visit thereto in June, 1918, he had not entered the box for any purpose and was astounded on opening his box in June, 1918, to find all his bonds gone, caused by the breach of contract of the defendant, as aforesaid.

### 6.

"The plaintiff, therefore, avers he had a right of action against the defendant for the sum above demanded and therefore he sues and demands a jury to try this case."

### AMENDMENT TO DECLARATION.

"In this cause the plaintiff by leave of the court had and obtained amends his declaration by adding the following:

"This was the first safe deposit box the plaintiff had ever had, and the customs and usages of banks in regard thereto was unknown to plaintiff and he supposed that the manner in which the defendant conducted its business was the usual and customary manner of banks operating safe deposit vaults. Plaintiff denies that he was guilty of contributory negligence proximately producing or causing the loss of the contents of his box.

"Plaintiff further alleges that said Weatherhead left Nashville in October, 1917, and turned his key over to plaintiff at that time, and plaintiff had the same thereafter, as heretofore alleged in the declaration. Plaintiff further alleges that neither he nor the said Weatherhead took these bonds out of the box after they were placed therein. Weatherhead has not been in Nashville since October, 1917."

The defendant has filed nine assignments of error. They take up six pages of the defendant's printed brief. That brief, however, states:

"These assignments, though nine in number, present only a few questions, namely:

1. Whether the declaration states a good cause of action—raised by the 1st and 2nd assignments;

2. Whether the court erred in excluding the evidence of Mr. Lindsey—quoted in 3rd assignment;

3. Whether the court erred in refusing defendant's motions for a directed verdict—raised by the 4th and 5th assignments; and

4. Whether the court erred in refusing the defendant's re-quests for special instructions to the jury—raised by the 6th, 7th and 8th assignments.

The points raised by the 9th assignments are really covered by the preceding assignments.''

### 1.

The first and second assignments are insufficient. They are too general. To say that the court erred in overruling a demurrer because the declaration did not state a cause of action is like demurring to a bill for want of equity on its face. However, passing this and referring to the declaration and demurrer thereto, we find no error in the action of the trial court in overruling the demurrer. The declaration states the facts upon which the plaintiff predicates the charge of negligence; the facts which, if true, constituted the defendant a bailee for hire, and the facts, which if proven, justified the court in submitting to the jury the question as to whether or not the defendant exercised ordinary care in safeguarding plaintiff's property. The demurrer does say that the declaration shows that plaintiff was familiar with the custom of defendant and other users of the vault, as to the method of doing business in the vault. The plaintiff in his amended declaration says this was the first safety vault box he ever used and he did not know what the custom and usage of banks was in this regard, and supposed the manner in which the defendant conducted its business was the usual and customary manner of banks operating safe deposit vaults. We think the demurrer does not raise the question of assumption of the risk by plaintiff, but even if it does the declaration as amended states a good cause of action and the demurrer was properly overruled.

It may be well to state in this connection that we do not see where this question of the assumption of risk by reason of plaintiff's familiarity with the defendant's course of business is raised by the assignments of error, though it is discussed in defendant's brief. If, however, it can be considered as raised, it is disposed of by the view we take of assignments 4 and 5, that is, it was left fairly to the jury.

### 2.

There was no error in excluding the evidence of Mr. Lindsey, or if there was it was harmless. The judge might have charged the jury

that under the system used by the defendant bank, there was no means of ascertaining whether the owner of the key or some one else was using the key, yet the jury could well have found, under the facts in the record, that the defendant was negligent in not having a better system, a system which would have made it impossible to use another's key, or at least a system which, if adopted, would have answered the charge of negligence. Under its method of doing business the bank would have no means of knowing whether he used one key or the other, but under a different system the bank might have had the means of knowing.

3.

Did the court err in refusing defendant's motion for a directed verdict, as set out in assignments of error 4 and 5.

The fourth assignment is based upon the motion for a directed verdict, which is as follows:

"The defendant moves the court to instruct the jury to return a verdict in its favor because—

First. There is no evidence to warrant a verdict against the defendant.

Second. The undisputed evidence shows that plaintiff's bonds were never delivered to the defendant or any of its officers or agents, nor brought to their knowledge as being in plaintiff's locked box, but remained always in the custody and possession and control of plaintiff, and therefore the relation of bailor and bailee never existed between the plaintiff and the defendant.

Third. The use of the box by plaintiff being gratuitous, the defendant would in no event be liable except for gross negligence or bad faith, and there is no evidence of such negligence or bad faith.

Fourth. The undisputed evidence leads to the conclusion that the plaintiff's bonds were abstracted from his box by means of one of his own keys, through his own carelessness."

First, there is evidence to support the verdict unless as a matter of law it could not be looked to by the jury in determining the liability of the defendant.

Second, the undisputed evidence does show that the plaintiff, after securing his box and after Weatherhead had moved away, placed his bonds in the box, to which he held both keys, without disclosing to the defendant that he had placed the bonds in said box, but it does not follow from this that the relation of bailor and bailee did not exist between plaintiff and defendant. On the contrary, the case of Young v. The Bank, 150 Tenn., 451, holds that this state of facts does create the relation of bailor and bailee, although the bank does not know and is not expected to know the contents of the box.

T. A. Vol. I—33.

Third, the use of the box was not gratuitous. The proof shows that the bank charged non-depositors rent for the use of boxes. They were free only to depositors in the bank. The profits to the bank from the average deposit account might well be more than the rental for a box. The contract between plaintiff and the defendant was supported by a valuable consideration. There cannot be any distinction between the obligation which the bank owed to plaintiff and to one who, not being a depositor, rented a box and paid for the use of it.

We have then the relation of bailor and bailee established by the proof. "The defendant was a bailee for hire. It devolved upon defendant to use ordinary care in the safe guarding of plaintiff's property." Young v. Bank, 150 Tenn., 461; Citing Cussen v. Bank, 133 Cal., 534.

Fourth, the defendant insists that the bonds were abstracted from the box by means of one of the plaintiff's keys, through his own negligence.

Under this assignment, then, we have this issue presented. The defendant, a bailee for hire and bound to exercise ordinary care to safeguard plaintiff's property, says the loss accrued not through its negligence, but through that of the plaintiff. This is the real issue in the whole case. If it is a question for the jury, it is difficult to see how the trial judge could have presented the question more fairly to the jury for determination. The judge told the jury that it was the duty of defendant to exercise ordinary care for the safety of the things deposited in the safety box.

If the proof shows that defendant exercised this degree of care, that is, such as an ordinarily prudent person would exercise in the preservation and care of his own property, then there can be no recovery. He told them if the plaintiff was negligent in keeping his keys, and this was the proximate cause of the loss, that he could not recover. He also charged the jury as to the law of proximate cause and the preponderance of the evidence. None of this is excepted to, but defendant's argument is based on the contention that the defendant was not a bailee for hire, nor a bailee in any sense. When this contention is decided against the defendant, as it has been in Young v. Bank, published after defendant's brief was filed, it follows that the question of negligence or contributory negligence was properly left to the jury, that there is material evidence to support the verdict, and it can not be disturbed.

4.

Was there error in the refusal to give the special instructions referred to in assignments 6, 7 and 8? The instruction upon which the 6th assignment was based was properly refused, because it involved

two errors; it assumed that the use of the box was without charge and that the undisputed facts did not make the defendant a bailee.

There was no error in refusing the instruction referred to in assignment 7. This was covered by the general charge. There was no controversy as to how the plaintiff had handled his keys. The court left it to the jury to say whether this constituted such contributory negligence as to prohibit a recovery. There was no need for further instruction.

The requested instruction made the basis of assignment 8 was properly refused. It would have been entirely improper for the court to give such a charge.

The 9th assignment, as suggested by the brief for defendant, is covered by preceding assignments.

It follows that all the assignments of error are overruled and the case is affirmed.

Faw, P. J. and Crownover, J., concur.